UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NANCY L. B. [1], | |
| Plaintiff, | |
| v. | CASE NO. 3:21-CV-99-MGG |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Nancy L. B. ("Ms. B") seeks judicial review of the Social Security Commissioner's decision denying Ms. B's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 12]. For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

I. **OVERVIEW OF THE CASE**

Ms. B filed an application for DIB on October 5, 2018, alleging a disability onset date of December 2, 2017. Ms. B's claim was denied initially on February 14, 2019, and upon reconsideration on March 20, 2019. Following a hearing on April 22, 2020, an Administrative Law Judge ("ALJ") issued a decision on June 10, 2020, which affirmed SSA's denial of benefits. The ALJ's decision became the final decision of the

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the Plaintiff by first name, middle initial, and last initial only.

Commissioner when the SSA Appeals Council declined review on December 9, 2020. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. B sought judicial review of the Commissioner's decision on February 11, 2021. Ms. B filed her opening brief on October 27, 2021, and the Commissioner filed her Memorandum in Support of Decision on February 1, 2022. This matter became ripe on February 16, 2022, when Ms. B filed her reply.[2]

## II.  APPLICABLE STANDARDS

### A.  Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity ["SGA"] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations as to: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the

---

[2] Notably, as the Commissioner's response brief was filed on February 1, 2022, Ms. B's reply brief filed on February 16, 2022, was one day late. *See* N.D. Ind. L.R. 7-3(d) ("Any reply brief must be filed within 14 days after the response brief.") However, the Court acknowledges that the Commissioner filed her brief one day before her extended response deadline of February 2, 2022, and that this may have caused Ms. B's tardy filing. [*See* DE 27]. As the Commissioner has not objected to Ms. B's tardy filing, and in accordance with the mandate of Fed. R. Civ. P. 1 to ensure a fair outcome of this action, the Court will consider Ms. B's reply as part of this opinion and order.

2

claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his RFC; and, if not, (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920[3]. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B.     Standard of Review

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

*Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir.2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th

4

Cir. 2005). Conversely, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III. ANALYSIS

#### A. The ALJ's Decision on Ms. B's Application

Ms. B's hearing before an ALJ on her DIB application took place on April 22, 2020, via telephone. On June 10, 2020, the ALJ issued her written decision finding that Ms. B was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. B had not engaged in substantial gainful activity from her alleged onset date of December 2, 2017, through her date last insured of December 31, 2019.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. Here, the ALJ found that Ms. B suffers from the following severe impairments: residual degenerative changes in the cervical spine/cervicalgia (status post cervical fusion), post-laminectomy syndrome, degenerative changes in the lumbar spine, rotator cuff tear and degenerative changes in the right shoulder (status post rotator cuff repair surgery), bilateral carpal tunnel syndrome (status post left carpal tunnel release surgery), Morton's neuroma of the left

foot, right knee osteoarthritis, and obesity. Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.,* 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that that Ms. B had the following non-severe medically determinable impairments: hypertension, dyslipidemia, flank pain, sinusitis, acute bronchitis, migraines, GERD, diabetes, constipation, allergies, depression, and anxiety.

At Step Three, the ALJ found that none of Ms. B's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ considered listings 1.02, 1.04, and 11.14. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. B can perform her past relevant work based upon her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that the individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Ms. B has

6

the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> except that she could only occasionally push and/or pull with the right upper extremity, occasionally climb ramps and stairs, never climb ladders/ropes/scaffolds, and occasionally balance, stoop, kneel or crouch. She was also not able to crawl or reach overhead with the bilateral upper extremities. She was occasionally able to reach in front and laterally to around waist level with the right upper extremity and she could frequently handle, finger and feel with the bilateral upper extremities. She also needed to avoid work activity requiring a forceful grasp or torque, such as required in turning handles or knobs, and she needed to avoid vibrating hand tools and surfaces. She further needed to avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (such as wet, slick or uneven surfaces, unprotected heights, and unguarded moving machinery).

[DE 16 at 25]. Based on this RFC, at Step Four, the ALJ found that Ms. B was unable to perform her past relevant work as a bindery worker (work that is generally done at the medium exertion level but was performed by Ms. B at the medium and heavy exertional levels). [*Id.* at 28]. Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Ms. B can perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). ALJs typically enlist a vocational expert ("VE") to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12. VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified the following

7

three representative jobs that Ms. B could still perform—dealer account investigator, furniture rental consultant, and counter clerk, which, respectively, have 22,000 jobs nationally, 40,000 jobs nationally, and 50,000 jobs nationally (112,000 jobs total).

Finding that Ms. B could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. B was not under a disability, as defined in the Act, from her alleged onset date through her date last insured of December 31, 2019. [DE 16 at 29].

### B.  Discussion

Ms. B contends that the ALJ's determination at Step Five was erroneous for two reasons. First, relying on the district court's analysis in *Sally S. v. Berryhill,* No. 2:18CV460, 2019 WL 3335033 (N.D. Ind. July 23, 2019), Ms. B argues that the number of jobs identified—three representative jobs totaling 112,000 jobs nationally—is not a significant number on which to deny DIB. Next, in her reply brief, Ms. B further contends that the Step Five determination was erroneous because the ALJ never defined a standard for significance before determining that 112,000 jobs was significant.

Ms. B's second argument challenges elements of the ALJ's Step Five analysis prior to the ultimate determination that 112,000 jobs was significant. Accordingly, the Court will address Ms. B's second argument first.

#### 1. A Standard for Significance

As stated, Ms. B's second argument contends that the ALJ's failure to present a standard for significance in the Step Five analysis was erroneous. Notably, however, this second argument was raised for the first time in reply. Accordingly, this argument

8

is typically considered waived. See Wonsey v. City of Chicago, 940 F.3d 394, 398 (7th Cir. 2019); see also Lesea, Inc. v. Lesea Broad. Corp., No. 3:18CV914-PPS/MGG, 2021 WL 3022918, at *3 (N.D. Ind. July 16, 2021) ("Issues raised for the first time in reply are waived, because the opponent has no opportunity to respond.") Yet even considering this argument, it must be rejected in light of the Seventh Circuit's recent decisions in *Milhem v. Kijakazi*, 52 F.4th 688 (7th Cir. 2022) and *Kuhn v. Kijakazi*, No. 22-1389, 2022 WL 17546947 (7th Cir. Dec. 9, 2022).

In *Milhelm*, the claimant, like Ms. B, contended that the ALJ's decision was not supported by substantial evidence because neither the ALJ nor SSA established a standard for significance prior to finding that the number of jobs identified was significant. See 52 F.4th at 694. The *Milhem* court rejected this argument, first finding that SSA's statutes and regulations "contain[] no such requirement." Id. at 694-95. Notably, while the regulatory framework provides that "work that exists 'in very limited numbers' cannot be considered 'significant,'" the court observed that ALJs, with substantial evidence, otherwise have discretion to determine what is significant on a case-by-case basis. Id. at 695 (citing 20 C.F.R. § 404.1566(b)). Thus, *Milhelm* found that the establishment of such a standard "might imply a categorical rule," which has been rejected in the context of the substantial evidence standard in social security hearings. Id. (citing *Biestek*, 139 S. Ct. at 1157). Accordingly, the court held that the ALJ's determination was "not depend[ent] upon the establishment of a standard of significance." Id.; see also *Kuhn*, 2022 WL 17546947, at *2 ("Under *Milhelm*, Kuhn's argument for a significance standard fails.")

9

Therefore, under *Milhelm* and *Kuhn*, Ms. B's argument that the ALJ must establish a standard for significance as part of the Step Five determination fails.

### 2. Significance of 112,00 jobs

Ms. B also argues that the 112,000 jobs identified by the ALJ fail to meet SSA's burden at Step Five, relying on the approach used in *Sally S.*, 2019 WL 3335033, at *11. In *Sally S.*, the ALJ found that the claimant was not disabled based upon testimony from a VE that the claimant could still perform 120,350 jobs in the national economy. *Id.* The claimant subsequently challenged the ALJ's Step Five determination on judicial review by contending that 120,350 jobs accounted for only 0.080% of the 150,606,000 jobs existing in the national economy at that time, which cannot be a significant number. The Court agreed and remanded her case for further administrative proceedings. *See id.*

Based on this, Ms. B first argues that, as the ALJ did not elicit information from the VE regarding the total number of jobs existing in the national economy "the percentage calculation necessary to gauge significance was not made." [DE 22 at 17]. Nevertheless, Ms. B conducts this percentage calculation in her opening brief, explaining that the number of jobs existing nationwide at the time of Ms. B's alleged onset date (December 2, 2017) was 154,021,000. [DE 22 at 18]. Based on this, Ms. B contends that the 112,000 total jobs identified in her decision amounts to just 0.0727% of jobs existing in the national economy—even less than the 0.080% considered not "significant" by the court in *Sally S.*

However, like Ms. B's prior argument, this argument must also fail based on the Seventh Circuit's decisions in *Milhelm* and *Kuhn*. Notably, the claimants in *Milhelm* and

*Kuhn* also relied upon *Sally S.* to contend that the number of jobs identified by the ALJ in their decisions—89,000 in both cases—was not significant. The court in *Milhelm* found reliance on *Sally S.* "misplaced," further observing that the Seventh Circuit's "case law does not provide a clear baseline for how many jobs are needed." 52 F.4th at 695-96. *Milhelm* also stated that the "only guidepost" was the court's prior decision in *Weatherbee v. Astrue*, which stated that 140,000 jobs nationwide was "well above the threshold for significance." *Id.* at 695, (quoting 649 F.3d 565, 572 (7th Cir. 2011)). Accordingly, *Milhelm* declined to rely on the percentage calculation from *Sally S.*

Instead, the court in *Milhelm* considered whether the ALJ's decision was based upon substantial evidence. *Id.* at 696. The court found that the ALJ "grounded her conclusion that the number of jobs mentioned was 'significant' on her consideration of [Milhelm's] age, education, work experience, and [RFC] and that [Milhelm] was capable of making a successful adjustment to work that exists in the economy." *Id.* Moreover, *Milhelm* found that the decision reflected an assessment of "the tolerance of absences in [the identified] positions, the requirements for being on task in the workplace, and the frequency of breaks." *Id.* For these reasons, the court found that "a reasonable person would accept 89,000 jobs in the national economy as being a significant number." *Id.*, *see also Kuhn,* 2022 WL 17546947 at *3 (finding that substantial evidence supported the ALJ's finding that 89,000 was significant). Finally, *Milhelm* also observed that the number of jobs identified—89,000—was "in accord" with the number of jobs found to be significant in other circuits. *See* 52 F.4th at 697 (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (finding 32,000 jobs nationwide significant); *Gutierrez v.*

11

*Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 jobs nationwide); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs nationwide); and *Weiler v. Apfel*, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (32,000 jobs nationwide)). Cf. *James A. v. Saul,* 471 F.Supp.3d 856, 860 (N.D. Ind. 2020) (finding, as a matter of law, 14,500 jobs is not a significant number of jobs); *Kordeck v. Colvin*, No. 2:14-cv-431-JEM, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (discussing obsolescence concerns with three jobs identified for the claimant as part of its remand).

Here, the ALJ for Ms. B's claim conducted an analysis akin to the ALJ in *Milhelm*. The ALJ inquired "whether jobs existed in the national economy for an individual with [Ms. B's] age, education, work experience, and residual functional capacity." [DE 16 at 29]. The VE testified that Ms. B could still perform "the representative unskilled occupations" of dealer account investigator, furniture rental consultant, and counter clerk, amounting to 112,000 jobs nationwide. [DE 16 at 29]. As part of this consideration, the ALJ also asked the VE about the impact of Ms. B's limitations in reaching and forceful grabbing, noting that these limitations are not specifically addressed by the DOT. [DE 16 at 71-72]. The VE also acknowledged that the DOT does not address these limitations but explained that, based on his knowledge and experience in the vocational field, these limitations did not erode the job numbers provided. [DE 16 at 72, 74]. The ALJ found this testimony "to be reasonable based on [the VE's] knowledge and experience in the vocational field." [DE 16 at 19]. Accordingly, the ALJ found that Ms. B could make "a successful adjustment to other work that exists in significant numbers in the national economy." [DE 16 at 19].

Ms. B has not otherwise challenged the VE's qualifications or testimony on review. Accordingly, without more from Ms. B, and consistent with *Milhelm* and *Kuhn*, a reasonable person would accept 112,00 jobs as significant based on this record. *See also Hoskins v. Kijakazi*, No. 1:21-CV-469-TLS-SLC, 2022 WL 17665088, at *8 (N.D. Ind. Dec. 14, 2022) (finding that substantial evidence supported an ALJ's conclusion that 21,500 jobs is significant to be "in accord" with *Milhelm*); *Harry v. Kijakazi*, No. 22-CV-0186-BHL, 2022 WL 17584174, at *5 (E.D. Wis. Dec. 12, 2022) (finding that substantial evidence supported an ALJ's conclusion that 29,800 jobs was significant under *Milhelm*); *Teresa M. v. Kijakazi*, No. 20 C 859, 2022 WL 17406596, at *8 (N.D. Ill. Nov. 22, 2022) (finding that substantial evidence supported a Step Five finding that 28,000 jobs was significant under *Milhelm*).

## IV. CONCLUSION

Based on the foregoing, the Court **AFFIRMS** SSA's decision denying Ms. B's application for DIB.

**SO ORDERED** this 26th day of January 2023.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
